**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

MERIAL LIMITED and MERIAL S.A.S

Plaintiffs and Counterclaim-Defendants,

v.

VELCERA, INC. and FIDOPHARM, INC.

Defendants and Counterclaim-Plaintiffs.

Case No. 3:11-cv-00157-CDL

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS WITH PREJUDICE**

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .......... ii

**INTRODUCTION** .......... 1

**ARGUMENT** .......... 2

I. Velcera Has Failed to Establish the Constitutional and Prudential Standing Required to Bring Its Diversion Claim. .......... 2

A. Velcera Lacks the Constitutional Standing to Bring Its Diversion Claim. .......... 2

B. Velcera Lacks Prudential Standing to Bring Its Diversion Claim. .......... 3

1. The Nature of the Injury and Directness of that Injury. .......... 5

2. Proximity of Velcera to the Allegedly Harmful Conduct. .......... 6

3. Speculative Nature of the Alleged Damages. .......... 7

4. Risk of Duplicative Damages. .......... 8

II. Velcera Has Not and Cannot Plead All of the Required Elements of Its Diversion, Comparison, or Efficacy Claims. .......... 9

**CONCLUSION** .......... 10

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ameritox, Ltd. v. Millennium Labs., Inc.*,
No. 8:11-cv-775, 2012 WL 33155 (M.D. Fla. Jan. 6, 2012) .... 10

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) .... 2, 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .... 2, 9

*Furniture "R" Us, Inc., v. Leath Furniture, LLC,*
No. 07-23321-CIV, 2008 WL 4444007 (S.D. Fla. Sept. 26, 2008) .... 6

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*,
634 F.3d 787 (5th Cir. 2011) .... 6, 7

*Nature's Earth Prods., Inc. v. Planetwise Prods., Inc.*,
No. 09-80770-CIV, 2010 WL 4384218 (S.D. Fla. Oct. 28, 2010) .... 2, 3, 5, 6

*Phoenix of Broward, Inc. v. McDonald's Corp.*,
489 F.3d 1156 (11th Cir. 2007) .... 2, 3, 8

*Precision IBC, Inc. v. PCM Capital, LLC*,
No. 10-00682-CG-B, 2011 WL 5444114 (S.D. Ala. Oct. 17, 2011) .... 8

*Salon FAD v. L'Oreal USA, Inc.*,
No. 10 Civ. 5063 (DLC), 2011 WL 70591 (SDNY Jan. 10, 2011) .... passim

*St. George v. Pinellas Cnty.*,
285 F.3d 1334 (11th Cir. 2002) .... 5

*Trump Plaza of Palm Beaches Condominium Assoc., Inc. v. Rosenthal*,
No. 08-80408-CIV, 2009 WL 1812743 (S.D. Fla. June 24, 2009) .... 8

## RULES

Federal Rule of Civil Procedure 12(b)(6) .... 1, 10

## OTHER AUTHORITIES

J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition §§ 27:29; 27:31
(4th Edition 2011) .... 8

## INTRODUCTION

Velcera's Counterclaims concern Merial's stated policy of selling its FRONTLINE products only within the veterinary channel (the "Diversion Claim").[1] Now, however, in its Memorandum in Opposition to Motion to Dismiss Counterclaims with Prejudice (Dkt. 27) (the "Response"), Velcera purports to clarify its position – and bolster its deficient pleading – by arguing that in addition to the Diversion Claim, it also intended to plead additional claims. These "newly-clarified" claims are based on allegedly false or misleading statements purportedly made by Merial that (a) Velcera's PETARMOR product is not as effective as FRONTLINE (the "Comparison Claim") and (b) FRONTLINE is a "complete killer" of fleas and ticks (the "Efficacy Claim"). Velcera attempts to use these new "claims" to reinforce the Diversion Claim that it has, in fact, asserted. Indeed, in its Response, Velcera relies upon these other alleged falsehoods to convince the Court that it possesses the constitutional and prudential standing to bring its Diversion Claim, and that it has adequately pled the requisite elements for such a claim. Velcera should not, however, be permitted to cobble together a claim from such disparate and unrelated parts.[2]

The critical issues for the Court's consideration remain unchanged. First, Velcera lacks both the constitutional and prudential standing to bring its Diversion Claim. Second, Velcera has failed to plausibly state a claim under Rule 12(b)(6) for false advertising on its Diversion Claim,

---

[1] The only two factual allegation sections of the Counterclaims are entitled "Merial Cultivates Brand Loyalty Among Veterinarians by Pretending to Sell Its Products Only Through Professional Channels" and "Merial's Representations of Vet-Only Sales Are False and Misleading."

[2] For example, even assuming that the statement that FRONTLINE is a "complete killer" is false or misleading (which it is not) and that the statement caused some injury to Velcera (which it has not), such a statement simply has nothing to do with Merial's stated policy of selling FRONTLINE products only in the veterinary channel. Velcera's suggestion otherwise defies logic; the issues are wholly unrelated.

as well as on its newly-minted Comparison and Efficacy Claims. Thus, for the reasons discussed herein and in Merial's opening brief (Dk. 24), the Court should dismiss Velcera's Counterclaims.

## ARGUMENT

### I. Velcera Has Failed to Establish the Constitutional and Prudential Standing Required to Bring Its Diversion Claim.

#### A. Velcera Lacks the Constitutional Standing to Bring Its Diversion Claim.

To demonstrate Article III constitutional standing, a plaintiff must allege that (1) it has suffered an actual or threatened injury, (2) the injury is fairly traceable to the challenged conduct of the defendant, and (3) the injury is likely to be redressed by a favorable ruling. *Phoenix of Broward, Inc. v. McDonald's Corp.,* 489 F.3d 1156, 1161 (11th Cir. 2007). Nothing in Velcera's Response changes the fact that Velcera fails to sufficiently allege that Merial's statements about its "veterinarian-only" sales policy have caused Velcera any injury, let alone that any injury is fairly traceable to these statements, or that any injury is likely to be redressed by a favorable ruling. For these reasons, Velcera lacks the constitutional standing necessary to assert its Diversion Claim. Indeed, in its Counterclaims, Velcera merely concludes that Merial's alleged acts "have caused and are causing great and irreparable injury in an amount that cannot be ascertained at this time…." (Counterclaims, ¶ 29). Such conclusory allegations, unsupported by fact, are not sufficient to survive a motion to dismiss. *See, e.g., Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (A pleading must set forth "enough facts to state a claim for relief that is plausible on its face."); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Nature's Earth Prods., Inc. v. Planetwise Prods., Inc.*, No. 09-80770-CIV, 2010 WL 4384218, at *2-3 (S.D. Fla. Oct. 28, 2010) (finding conclusory statement of harm insufficient to satisfy first two prongs of constitutional

standing inquiry). Velcera uses its Response to "beef up" its allegations, arguing that "as Merial sells more diverted and/or falsely advertised product, Velcera is deprived of sales." (Response, p. 7.). This attenuated argument, however, is nowhere to be found in the Counterclaims as alleged, and should therefore be disregarded. *Nature's Earth,* 2010 WL 4384218, at *3 (noting that "the Court's review [of Constitutional standing] is limited to the allegations in Defendant's First Amended Counterclaim.").

In sum, Velcera does not possess the constitutional standing to bring its Diversion Claim under the Lanham Act. The Court should dismiss these claims.

**B. Velcera Lacks Prudential Standing to Bring Its Diversion Claim.**

As set forth in Merial's opening brief, courts in the Eleventh Circuit weigh the following factors to determine whether a party has prudential standing to bring a false advertising claim: (1) the nature of the plaintiff's alleged injury, (2) the directness or indirectness of the asserted injury, (3) the proximity or remoteness of the party to the alleged injurious conduct; (4) the speculativeness of the damages claim, and (5) the risk of duplicative damages or complexity in apportioning damages. *Phoenix of Broward,* 489 F.3d at 1164-65, 67 (direct competitor does not possess standing by simply alleging a "competitive injury."). Velcera puts forth no credible argument that it has prudential standing to bring its Diversion Claim.

In its Response, Velcera relies in large part on *Salon FAD v. L'Oreal USA, Inc.,* an unpublished decision from the Southern District of New York. *See Salon FAD v. L'Oreal USA, Inc*., No. 10 Civ. 5063 (DLC), 2011 WL 70591 (SDNY Jan. 10, 2011); (Response, pp. 8-9). *Salon FAD* involved beauty salons alleging that beauty product manufacturers were liable for a false advertising claim based on diversion because the manufacturers stated that their products were "salon-only," when in fact they were sold in mass retail stores. *Salon FAD,* 2011 WL 70591 at *1. The salons, all of which sold the manufacturers' products, contended that they

suffered a reputational injury with consumers who purchased products at their salons, only to discover that the products were also available at mass retailers. *Id*. The court found that the salons "identif[ied] an injury that is separate from the injury created by the diversion." *Id*. at *3. It further found that a causal relationship existed between the manufacturers' advertising and that injury, since the salons suffered reputational damage from consumers believing that the salons were lying. *Id*. at *5.

The facts and circumstances of *Salon FAD* are different in several critical ways from those in this case. As an initial matter, the *Salon FAD* court did not evaluate the prudential standing factors used by the Eleventh Circuit, so its precedential value is *de minimis*. Also, Velcera has not alleged a reputational injury analogous to the one in *Salon FAD*. Indeed, it is the *veterinarians*, not competitors such as Velcera, who stand in the same position as the beauty salons in *Salon FAD*. While Velcera argues that it alleged in its Counterclaims that Merial's advertising is likely to cause consumers to mistakenly believe that Merial's products are superior or stronger to other parasiticides, Velcera does not allege that it has lost customers or sales as a result. (*See* Response, p. 10.) Instead, it indicated that Merial's conduct engenders brand loyalty, premium pricing, increased sales, and lowered advertising costs for Merial, without any reference to any injury to Velcera, or indeed, any reference to Velcera at all. (Counterclaims, ¶¶ 14, 16, 20-23.) The fact that pet owners are likely to believe that Merial's products are worth a premium price, as Velcera argues in its Response, is simply not the same thing as an allegation that customers bought Merial's product instead of Velcera's product, or that Velcera was otherwise injured. (*See* Response, p. 10.) The Court should find that Velcera lacks the prudential standing to assert its Diversion Claim.

### 1. The Nature of the Injury and Directness of that Injury.

The first two factors weigh in favor of a finding that Velcera lacks prudential standing to bring its Diversion Claim. *Nature's Earth Products* is closely on point. *Nature's Earth,* 2010 WL 4384218. In *Nature's Earth*, Planetwise Products, a cat-litter company, brought a counterclaim against a competitor in the natural-litter market, alleging that the competitor falsely advertised its natural-litter product as being chemical and additive-free. *Id.* at *1. Planetwise further alleged that the deceptive marketing harmed Planetwise and other competitors in the relevant market, and that it had "been injured as a result of [the competitor's] deceptive, false, fraudulent, and misleading advertisements, marketing and promotion, thereby resulting in damages to [Planetwise]." *Id*. at *1-2. The competitor moved to dismiss the counterclaim on the basis that Planetwise lacked prudential standing to assert such a claim. *Id*. In its response to the motion, Planetwise argued that it had sustained injury, since the competitor's "activities ha[d] directly lowered [its] sales and profits [because] purchasers are selecting [the competitor's] cat litter products, as a result of [the competitor's] advertising." *Id*. at *3 (citations omitted). The court disregarded that statement since it was made in Planetwise's response brief and not properly alleged in its counterclaim, and found that Planetwise failed to assert an injury, or a direct relationship between the competitor's conduct and an injury. *Id*. at 2, 4. Velcera's Counterclaims suffer from the same shortcoming.

Velcera further argues that it has suffered harm to its ability to compete and an erosion of its goodwill and reputation. (Response, p. 10). Neither of these injuries, however, is alleged in Velcera's counterclaims. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002) (when evaluating a motion to dismiss, "[t]he scope of the review must be limited to the four corners of the complaint.") Even if the Court accepts these unpled allegations, the causal link between Merial's alleged misrepresentations and any harm to Velcera is too tenuous to support

prudential standing. Merial's statements that it sells only in the veterinary channel cannot be logically linked to Velcera's losses because the chain is broken by the intervening acts of third-party veterinarians selling to retailers. Because of this intervention, Velcera does not, and cannot, credibly allege or argue that "but for" Merial's "veterinarian-only" statements customers would have bought PetArmor. *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 759 (5th Cir. 2011) ("[T]he indirectness of the plaintiff's asserted injury most clearly weighs against standing where the defendant's misrepresentations injure the plaintiff only by virtue of the intervening acts of some third party."); *see also Furniture "R" Us, Inc., v. Leath Furniture, LLC,* No. 07-23321-CIV, 2008 WL 4444007, at *3 (S.D. Fla. Sept. 26, 2008) (noting that "[t]here is no allegation that 'but for' these advertisements customers would have shopped at Furniture Power (as opposed to one of the numerous other furniture stores in South Florida)").

**2. Proximity of Velcera to the Allegedly Harmful Conduct.**

Velcera does not and cannot allege either a recognizable injury or a causal link between Merial's statements about its veterinarian-only sales policy and any harm. Accordingly, Velcera is not the appropriate party to pursue the Diversion Claim. *See Nature's Earth*, 2010 WL 4384218, at *5 ("Defendant, although a competitor, does not allege a recognizable injury or a link between its purported harm and Plaintiff's conduct, and therefore Defendant does not fall into this class").

Velcera argues that it is the most proximate party to bring a Diversion Claim against Merial given that it "ha[s] alleged an injury to [its] own competitive interests that is not derivative of an injury to some other party's competitive position." (Response, p. 13) (internal quotation omitted). The injury to which Velcera refers relates to Merial's alleged statements

about PetArmor's efficacy, not Merial's veterinarian-only sales policy. The statements on efficacy are entirely unrelated to those on sales policy, and do nothing to make Velcera the most or even a proximate party to the Diversion Claim. There are no allegations in the Counterclaims that indicate that Velcera suffered a unique injury over any other competitor in the flea and tick industry. On the contrary, Velcera intimates in its Counterclaims that competitors that sell only to veterinarians would be more appropriate parties to bring a claim for diversion. (Counterclaim, ¶ 3) (noting that "if veterinarians understood that Merial was making FRONTLINE® readily available to non-veterinary outlets, some veterinarians would opt to switch their recommendation to products that were truly exclusive to the veterinary channel.").

**3. Speculative Nature of the Alleged Damages.**

Velcera argues that "[w]here a plaintiff 'plead[s] that the defendant's anti-competitive conduct…has caused the plaintiff to lose profits,' the plaintiff has 'state[d] a damages claim that is sufficiently determinate to support Lanham Act standing." (Response, p. 14, *quoting Harold H. Huggins*, 624 F. 3d at 801.) Velcera, however, failed to plead that it lost profits as a result of Merial's stated policy of selling only to the veterinarian channel.

Similarly unpersuasive is Velcera's argument that damages would not be speculative because there are purportedly only a small number of competitors in the flea and tick parasiticide field. (Response, p. 15). Velcera cites to a non-exhaustive list of six competitors for its new, unpled assertion that there are few competitors in the field. (*Id.*) There are, however, multiple companies that sell flea and products that compete at some level with Merial and Velcera. (Dkt. 10, Exh. D, Decl. of Guillermo Lopez, ¶ 22; *see* Counterclaims, ¶ 23) (alleging several competitive products). As previously indicated, it would be virtually impossible to determine (a) how many veterinarians and consumers would have bought Velcera's flea and tick products, and not a third-party product, had Merial not allegedly misrepresented that it sells its products only to

veterinarians, and (b) the percentage of veterinarians and consumers that would have purchased Merial's product irrespective of the challenged conduct. The impossibility of the task is especially clear given Velcera's allegation that veterinarians are loyal to Merial for reasons other than its alleged misconduct, including incentive programs offered by Merial to veterinarians and its extensive efforts to nurture its relationship with veterinarians.[3] (Counterclaims, ¶¶ 14-16).

**4. Risk of Duplicative Damages.**

When there are several competitors in the same market as the claimant, courts find that the fifth factor weighs against a finding of prudential standing. *Phoenix of Broward, Inc.*, 489 F.3d at 1172. Thus, the case here is inapposite to cases such as *Trump Plaza*, where there were only two possible plaintiffs. *Trump Plaza of Palm Beaches Condominium Assoc.,* 2009 WL 1812743, at *8. In this case, there are several competitors in the flea and tick industry. (Dkt. 10, Decl. of Guillermo Lopez, ¶ 22, Exh. D). And, given Velcera's reliance on *Salon FAD*, the allegedly injured parties here would also include veterinarians. If Velcera is found to have

[3] Velcera argues that the standing bar in this case is lower because it seeks an injunction in addition to damages, citing to McCarthy's treatise – but to no Eleventh Circuit authority – for the proposition that damages and standing are presumed where parties are competitors. (Response, p. 15, fn. 15.) McCarthy, however, notes that (a) standing is not automatic, (b) some circuits reject the notion that standing is presumed in such a scenario, and (c) courts require more where the alleged false advertisements do not draw direct comparisons between products (as is the case here). J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition §§ 27:29; 27:31 (4th Edition 2011). Moreover, in a case, although not involving injunctive relief, the Eleventh Circuit held that it "[disagree[d] with [plaintiff's] contention that 'direct competitors' alleging a 'competitive' injury 'invariably satisfy' the [prudential standing] requirements." *Phoenix of Broward, Inc.*, 489 F.3d at 1167. And various district courts within the Eleventh Circuit have evaluated the standing factors without regard to whether injunctive relief has been requested. *See, e.g., Precision IBC, Inc. v. PCM Capital, LLC*, No. 10-00682-CG-B, 2011 WL 5444114 (S.D. Ala. Oct. 17, 2011); *Trump Plaza of Palm Beaches Condominium Assoc., Inc. v. Rosenthal*, No. 08-80408-CIV, 2009 WL 1812743, at *4 (S.D. Fla. June 24, 2009) (stating in a case between non-competitors that "[U]nder Section 43(a) at least the likelihood of injury must be proven if only injunctive relief is to be ordered").

prudential standing, then every company in the flea and tick market and every veterinarian could also bring a false advertising claim against Merial. Velcera argues that it is the competitor most directly injured by Merial's "bad acts" and that no other plaintiff would be able to establish liability for the same conduct. Yet Velcera intimates in its Counterclaims that competitors with veterinarian-only sales would be even more proximate to bring a claim for diversion. (*See* Counterclaim, ¶ 3) (noting that "some veterinarians would opt to switch their recommendation to products that were truly exclusive to the veterinary channel.")

Each of the above factors weighs against a finding of prudential standing. Accordingly, the Court should dismiss Velcera's Diversion Claim.

## II. Velcera Has Not and Cannot Plead All of the Required Elements of Its Diversion, Comparison, or Efficacy Claims.

Notwithstanding Velcera's contention that Merial's arguments are merits-based (Response, pp. 17-18), this Court can consider Velcera's factual allegations on this motion and "determine whether they plausibly give rise to an entitlement to relief" before permitting the claim to proceed to discovery. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, at 1950 (2009). An implausible claim should be dismissed to preserve the scarce resources of this Court and the parties. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007).

First, Velcera's Diversion Claim is simply not plausible. In *Salon FAD*, a case heavily relied upon by Velcera in its Response, the court found that the salons were injured because consumers attributed the false statements to the salons, believing that the salons were lying in order to garner sales at premium prices. *Salon FAD*, 2011 WL 70591, at *5. In this case, however, it is widely known and acknowledged by Merial, veterinarians, and consumers alike that, despite Merial's attempts to stop diverted products from being sold in the OTC channel, FRONTLINE PLUS products are available at retail stores across the United States. (*See* Dkt.

10-3, Declaration of Guillermo Lopez, ¶ 8) ("a substantial resale market is known to exist for FRONTLINE PLUS products, and they are widely available in retail outlets, including pet supply stores, general retail stores (e.g., Target and Costco), and online retailers.").

Even if a question of "fact," it defies reason and common sense to suggest that veterinarians and consumers would be deceived, let alone that the deception would influence their purchasing decisions. Consumers who see Merial's products in retail stores will obviously understand that the products are sold in retail stores – in fact, right in front of them. Moreover, Velcera does not even make an attempt to explain how it has been, or could possibly be, harmed by any of Merial's statements regarding its veterinarian-only sales policy.

With regard to the other claims, the allegation supporting the Comparison Claim that "Merial sales representatives have falsely been telling veterinarians that Velcera's products are not as efficacious as FRONTLINE®'s products because Velcera's products use different inert ingredients and do not translocate effectively across the pet's skin" (Counterclaims, ¶ 23) cannot support a false advertising claim. Neither can the Efficacy Claim, which is based on Merial's statement that FRONTLINE PLUS is a "complete killer" that allegedly implies that the product kills "all fleas and ticks' and "kill[s] them immediately." (*Id.*, ¶ 24). Indeed, on neither claim is there any allegation that (1) the statement "actually deceived customers or had the tendency to deceive a substantial portion of the targeted audience" or (2) the statement was "sufficiently disseminated to the relevant purchasing public." *Ameritox, Ltd. v. Millennium Labs., Inc.*, No. 8:11-cv-775, 2012 WL 33155, *2-3 (M.D. Fla. Jan. 6, 2012) (granting motion to dismiss on these grounds). The Court should dismiss all of Velcera's Counterclaims pursuant to Rule 12(b)(6).

**CONCLUSION**

For the reasons set forth herein and on the authorities cited, Velcera's Counterclaims should be dismissed with prejudice.

Respectfully submitted, this 16th day of February, 2012.

**/s/ Edward D. Tolley**

Judy Jarecki-Black, Ph.D., Esq.
(judy.jarecki@merial.com)
Georgia Bar No. 801698
MERIAL LIMITED
3239 Satellite Blvd.
Duluth, Georgia 30096-4640
Tel.: (678) 638-3805
Fax: (678) 638-3350

J. Patrick Elsevier, Ph. D., Esq.
(jpelsevier@jonesday.com)
Georgia Bar No. 246694
JONES DAY
12265 El Camino Real
Suite 200
San Diego, California 92130-4096
Tel.: (858) 314-1200
Fax.: (858) 314-1150

Edward D. Tolley, Esq.
(etolley@mindspring.com)
Georgia Bar No. 714300
COOK NOELL TOLLEY & BATES LLP
304 East Washington Street
P.O. Box 1927
Athens, GA 30603-1927
Tel.: (706) 549-6111
Fax: (706) 548-0956

Frank G. Smith, III, Esq.
(frank.smith@alston.com)
Georgia Bar No. 657550
Jason D. Rosenberg, Esq.
(Jason.rosenberg@alston.com)
Georgia Bar No. 510855
Kathryn W. Bina, Esq.
(kitty.bina@alston.com)
Georgia Bar No. 956052
Matthew W. Howell, Esq.
(matthew.howell@alston.com)
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Tel.: (404) 881-7000
Fax: (404) 881-7777

*Counsel for Plaintiffs Merial Limited and Merial SAS*

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

| | |
|---|---|
| MERIAL LIMITED and MERIAL SAS<br><br>Plaintiffs,<br><br>v.<br><br>VELCERA, INC. and FIDOPHARM, INC.<br><br>Defendants | Civil Case No. 3:11-cv-00157-CDL |

**CERTIFICATE OF SERVICE**

I hereby certify that I have this date filed foregoing PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS WITH PREJUDICE, via the Court's CM/ECF system, which will automatically give notice to all counsel of record.

This 16th day of February, 2012.

s/___Edward D. Tolley_____________

Edward D. Tolley