IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| MERIAL LIMITED and<br>MERIAL S.A.S.,<br><br>      Plaintiffs – Counterclaim Defendants<br><br>v.<br><br>VELCERA, INC. and FIDOPHARM,<br>INC.,<br><br>      Defendants – Counterclaim Plaintiffs | Case No. 3:11-cv-00157-CDL |

**VELCERA, INC.'S AND FIDOPHARM, INC.'S MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFFS'– COUNTERCLAIM DEFENDANTS'
MOTION FOR PROTECTIVE ORDER TO STAY DISCOVERY ON
COUNTERCLAIMS AND TO QUASH SUBPOENAS**

Defendants – Counterclaim Plaintiffs Velcera, Inc. and FidoPharm, Inc. (collectively "Velcera") respectfully submit this memorandum of law in opposition to Plaintiffs – Counterclaim Defendants Merial Limited's and Merial S.A.S.'s (collectively "Merial") Motion for Protective Order to Stay Discovery on Velcera's Counterclaims and to Quash Subpoenas [Doc. 41]. As shown below, Merial has failed to satisfy its burden of proving good cause and reasonableness for a stay because (i) Merial's pending motion to dismiss Velcera's counterclaims – if granted – will not dispose of the entire case or eliminate the need for the discovery that Merial seeks to stay; (ii) the two non-party subpoenas Merial moves to quash seek discovery that is essential to Velcera's defenses to Merial's claims of trade dress infringement; and (iii) a stay will prejudice Velcera's

ability to defend against Merial's claims.  Accordingly, Merial has not and cannot show good cause for entry of a protective order and its motion should be denied.[1]

## INTRODUCTION

As shown in Velcera's pending Motion to Compel and in the Alternative to Amend Scheduling Order [Doc. 44], Merial has refused to respond to certain discovery requests related to Velcera's counterclaims, even though those requests are also directly related to Velcera's defenses to Merial's claims.  In its continued attempt to unilaterally limit the scope of discovery in this case, Merial has now moved to stay enforcement of two non-party subpoenas served by Velcera on Douglas W. Lambert and his company Lambert Vet Supply LLC (the "Lambert Subpoenas," attached hereto as Exhibit A) on the grounds that this limited discovery is "extensive and expensive" and relates solely to Velcera's counterclaims, which are the subject of Merial's pending motion to dismiss. (the "Motion to Dismiss") (*See* Merial's Mem. of Law [Doc. 41-1] at 2.)  Contrary to Merial's assertions, *the Lambert Subpoenas seek discovery directly related to Velcera's defenses to Merial's claims.*  Not only would Velcera be prejudiced by a stay of discovery directed to its defenses to Merial's claims, the Motion to Dismiss – even if granted – will not dispose of the entire litigation or eliminate the need for the discovery

---

[1] Merial's motion should be denied for the additional reason that the requested relief to quash the subpoenas is not properly before this Court because the subpoenas were issued by the United States District Court for the District of Nebraska.  Under Fed. R. Civ. P. 45, only the "issuing court" may quash or modify a subpoena.  *See* Fed. R. Civ. P. 45(c)(3).  Recognizing that its requested relief was procedurally improper, on April 3, 2012, Merial filed its untimely motion to stay enforcement of the subpoenas in the District Court for the District of Nebraska.

sought by the Lambert Subpoenas or by any additional discovery related to Velcera's defenses, including discovery directed to the distribution channels of Merial's FRONTLINE PLUS Products.  A stay of discovery is not warranted under such circumstances.  Indeed, Merial continues to serve third-party subpoenas to support its claims.  Discovery cannot be a one-way street.  Merial cannot justifiably assert claims against Velcera and seek discovery to support those claims, and then seek to stay discovery essential to Velcera's defenses to those claims simply because such discovery also relates to Velcera's counterclaims which are the subject of a pending motion to dismiss.  Accordingly, Merial's Motion should be denied.

## ARGUMENT AND CITATION TO AUTHORITIES

The party seeking to stay discovery "must prove good cause and reasonableness" to support the stay.  *Arriaga-Zacarias v. Lewis Taylor Farms, Inc.*, No. 7:08-CV-32, 2008 WL 4544470, at *1 (M.D. Ga. Oct. 10, 2008).  In evaluating whether the moving party has met its burden, a district court "must balance the harm produced by the delay in discovery against the possibility that the motion will be granted and *entirely eliminate the need for such discovery*." *Id.* (emphasis added).  Indeed, in this Circuit, a motion to stay discovery "is rarely appropriate unless resolution of the [pending] motion *will dispose of the entire case*."  *Bocciolone v. Solowsky*, No. 08-20200-CIV, 2008 WL 2906719, at *1 (S.D. Fla. July 24, 2008) (emphasis added); *see also Arriaga-Zacarias*, 2008 WL 4544470 at *1 (explaining that discovery should not be stayed as a matter of course pending resolution of a motion to dismiss).

3

**A.    Merial Has Failed To Meet Its Burden Of Proving That Good Cause And Reasonableness Support A Stay Of Discovery On Velcera's Counterclaims.**

**1.    Resolution Of The Pending Motion To Dismiss Will Not Dispose Of The Entire Case Or Eliminate The Need For The Discovery That Merial Seeks To Stay.**

There is no dispute that the Motion to Dismiss could, at most, only dispose of Velcera's counterclaims and thus could not result in resolution of the entire case. That fact alone renders the requested stay improper. *See Bocciolone*, 2008 WL 2906719, at *2 (denying motion to stay discovery where resolution of defendants' motion to dismiss would not dispose of the entire case). Indeed, the cases cited by Merial are inapposite because they all involved a dispositive motion. That is, the dispositive motion – if granted – would dispose of the *entire* case and eliminate the need for discovery completely. Here, by contrast, even if Merial's Motion to Dismiss is granted, Merial's claims of trade dress infringement and false advertising will remain. Those claims involve much of the same discovery that Merial now seeks to stay, including discovery directed to the distribution channels of Merial's FRONTLINE PLUS Products and elements that are essential to Merial's claim of infringement.

*a. The Lambert Subpoenas Seek Discovery Relevant to the Issue of the Similarity of the Parties' Retail Outlets and Purchasers.*

The similarity of the parties' retail outlets and purchasers is a key factor in Merial's burden of proof on its claim of trade dress infringement. *See Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC*, 369 F.3d 1197, 1207 (11th Cir. 2004) (explaining that "[t]he touchstone test for a violation of Section 43(a) is the likelihood of confusion resulting from the defendant's adoption of a trade dress similar to plaintiff's").

In determining whether a plaintiff has proved a likelihood of confusion, courts will consider a number of factors, including "the similarity of retail outlets and purchasers." *Id.; see also Ambrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1541 (11th Cir. 1986) ("Likelihood of confusion is more probable if the products are sold through the same channels to the same purchasers.")

Request No. 3 in the Lambert Subpoenas seeks "all documents relating to the sale or distribution of FRONTLINE Products in non-veterinary channels, including … online and brick-and-mortar retail stores and pharmacies." [2] Request No. 4 seeks "communications … between [Douglas W. Lambert or Lambert Vet Supply LLC] and Merial regarding the sale or distribution of FRONTLINE Products in non-veterinary channels." In its Amended Complaint, Merial asserts that it sells FRONTLINE PLUS Products to veterinarians and to distributors who agree to distribute FRONTLINE PLUS Products "only to veterinarians." (*See* Am. Compl. [Doc. 6], ¶ 19). It is undisputed that FRONTLINE PLUS Products are sold at various retail outlets as a result of parties

---

[2] Merial's suggestion that the Lambert Subpoenas seek "extensive and expensive" discovery is simply not tenable. (*See* Mem. of Law at 2.) The Lambert Subpoenas are each limited to a deposition and four document requests. Moreover, Velcera has not served any additional subpoenas as of the filing of its opposition to Merial's motion. Merial, however, continues to serve third-party subpoenas seeking discovery to support its claims. (*See* Merial's Notice of Subpoena Duces Tecum to Non-Party Cranford Johnson Robinson Woods, Inc. (attached hereto as Exhibit B) notifying Velcera of Merial's intent to serve a document subpoena on an advertising agency that Velcera worked with.) The subpoena contains six document requests, all of which request information that Merial seeks to support its claims. Remarkably, Merial – continuing to attempt to unilaterally limit the scope of discovery in this case – purports to stay discovery that Velcera seeks to defend against those very claims.

purchasing FRONTLINE PLUS Products from veterinarians and then reselling the products to retailers. (*Id.* ¶ 20). Merial further alleges that (i) consumers "are likely to believe that the PETARMOR Products are retail store versions of the FRONTLINE PLUS Products sold primarily through veterinarians;" and (ii) PETARMOR Products are "frequently sold in the same retail outlets" as the FRONTLINE PLUS Products. (*Id*. ¶¶ 48, 54.) Because Merial purportedly does not sell directly to retail outlets, Velcera cannot determine the identity of those retail outlets without discovery – such as the Lambert Subpoenas – directed at third parties who are involved in the process through which FRONTLINE PLUS Products reach consumers. Velcera expects that the Lambert Subpoenas will produce discovery showing that the distribution channels of Merial's FRONTLINE PLUS products are vastly dissimilar from the distribution channels of Velcera's PETARMOR Products, thus lessening the possibility of confusion.[3]

Indeed, in its March 23, 2012 letter to Velcera, Merial not only admits that "the similarity of the parties' retail outlets and the purchasers is another key factor in the likelihood of confusion analysis," Merial relies on that language to demand from Velcera the same type of discovery that Velcera seeks through the Lambert Subpoenas. (*See*

---

[3] Merial cannot deny that a substantial part of its sales of FRONTLINE PLUS are through third-parties such as Douglas W. Lambert and Lambert Vet Supply LLC, especially considering that Merial claims that it sells the product "only to veterinarians." (Am. Compl. ¶ 19). Indeed, Merial's Amended Complaint attaches photos of its FRONTLINE PLUS product next to PETARMOR at a veterinary medicine display at a retail outlet. (Am. Compl. ¶ 54). Merial, however, purports to deny Velcera the opportunity to conduct discovery on Merial's distribution channels and placement of its products at retail outlets – discovery that goes directly to an essential element of Merial's claim.

March 23, 2012 Letter from J. Rosenberg to J. Wargo (attached hereto as Exhibit C), at 3-4; "Interrogatory No. 8 seeks information on the process by which PETARMOR products reach consumers, including an identification of third-parties that are involved in this process.")  Merial asserts that it is entitled to "full discovery" on the process by which PETARMOR Products reach consumers because it is "directly related to Merial's claims."  (*Id.*)  Merial cannot on the one hand seek discovery on the channels of distribution from Velcera and on the other hand argue for a stay of discovery on that issue.

### b. The Lambert Subpoenas Seek Discovery Relevant to the Purported Strength of the FRONTLINE PLUS Trade Dress.

In addition, the four Requests in the Lambert Subpoenas seek discovery directly related to the "strength of the trade dress," which is an additional factor that courts must look at in determining whether a plaintiff has proved a likelihood of confusion.  *See Dippin' Dots, Inc.*, 369 F.3d at 1207; *Ambrit, Inc.*, 812 F.2d at 1539.  Each Request seeks information and documents regarding "the sale or distribution of FRONTLINE Products," including the sale or distribution in non-veterinary channels and/or with third parties.  This discovery is critical to Velcera's ability to demonstrate the loss of the purported strength of the FRONTLINE Plus trade dress through Merial's disregard of its own marketing channels and/or failure to police its trade dress.  *See Malaco Leaf, AB v. Promotion in Motion, Inc.*, 287 F. Supp. 2d 355, 364-65 (S.D.N.Y. 2003) (granting defendant's motion for summary judgment and holding that plaintiff's failure to police its trade dress in numerous and widespread distribution channels was evidence that its trade

dress is weak and has not acquired distinctiveness); *see also* 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 17:8 (4th ed.) (explaining that a trade dress may lose its strength and become generic and abandoned "as a result of the trademark owner's failure to police [it], so that widespread usage by competitors leads to a generic usage among the relevant public, who see many sellers using the same [product design].") (emphasis added).

Indeed, despite Merial's claim that it sells FRONTLINE PLUS "only to veterinarians," Merial admits that FRONTLINE PLUS is distributed and sold through numerous and widespread marketing channels.  (*See* Am. Compl. ¶¶ 19-20; "some parties purchase FRONTLINE PLUS from veterinarians and then resell FRONTLINE PLUS to retail outlets, including pet supply stores, general retail stores (e.g., Target and Costco), and online retailers.")  Moreover, Merial claims that the alleged infringement here is occurring at "some of the identical pet supply stores, general retail stores, and online retailers through which FRONTLINE PLUS is sold."  (*Id*. ¶¶ 40, 47-48).  The discovery sought from the Lambert Subpoenas – including subpoenas that Velcera will serve on additional third-parties who are involved in the sale or distribution of FRONTLINE PLUS – is essential to Velcera's ability to demonstrate that the alleged infringement here is a self-inflicted wound caused by Merial's failure to police its trade dress in the numerous marketing channels through which FRONTLINE PLUS is distributed and sold.  This discovery is directly related to the "strength of the mark," which is one of the seven factors that courts must consider in determining whether a plaintiff has met its burden of proof on the "likelihood of confusion" element that is essential to its claim.  *See Dippin'*

*Dots, Inc.*, 369 F.3d at 1207 (holding that "the extent to which two marks are confusingly similar cannot be assessed without considering *all seven factors to ensure that the determination is made in light of the totality of the circumstances*") (emphasis added).

Accordingly, this is simply not a case that warrants a stay of discovery, and district courts in this circuit have routinely denied motions to stay under identical circumstances. *See, e.g., S.K.Y. Management LLC v. Greenshoe, Ltd.*, No. 06-21722-CIV, 2007 WL 201258 at *2 (S.D. Fla. Jan. 24, 2007) (denying motion to stay discovery where defendant's pending motion to dismiss would not dispose of the entire case and would result in production of much of the same discovery that defendant seeks to stay); *Allstate Life Ins. Co. v. The Estate of Miller*, No. 03-61797-CIV, 2004 WL 141698 at *2 (S.D. Fla. Jan. 16, 2004) (denying defendants' motion to stay discovery pending resolution of defendants' motion for summary judgment and holding that plaintiffs were entitled to pursue discovery directly related to their defenses to defendants' counterclaims even though plaintiffs' defenses included legal questions raised by its original complaint).

### 2. Granting Merial's Requested Stay Will Prejudice Velcera's Ability To Defend Against Merial's Claims.

As Velcera has shown, the discovery sought by the Lambert Subpoenas – including any additional discovery directed to third parties concerning the distribution channels of Merial's FRONTLINE PLUS Products – is directly related to Merial's causes of action for trade dress infringement. Velcera is entitled to pursue discovery necessary to establish its defenses to Merial's claims. Merial does not and cannot dispute that fact. Accordingly, it would be inequitable to stay discovery on Velcera's counterclaims

because it is *not* possible to stay discovery only as to the counterclaims without any prejudice to Velcera.  *See Allstate Life Ins. Co.*, 2004 WL 141698 at *2 (denying defendants' motion to stay discovery pending resolution of defendants' motion for summary judgment and holding that it would be inequitable to stay discovery in light of defendants' counterclaims that entitled plaintiffs to pursue discovery to establish their defenses to the counterclaims).

## CONCLUSION

For the foregoing reasons, Merial's Motion for Protective Order to Stay Discovery on Velcera's Counterclaims and to Quash Subpoenas should be denied.

Dated:  April 27, 2012                     WARGO & FRENCH LLP

/s/ Joseph D. Wargo
Georgia Bar No. 355045
(jwargo@wargofrench.com)
Michael S. French
Georgia Bar No. 276680
(mfrench@wargofrench.com)
Michael Wolak, III
Georgia Bar No. 773197
(mwolak@wargofrench.com)
999 Peachtree Street, NE
26th Floor
Atlanta, GA  30309
Tel:  (404) 853-1500
Fax:  (404) 853-1501

-and-

| | |
|---|---|
| William L. Tucker<br>(wlt@psstf.com)<br>Georgia Bar No. 718050<br>James C. Clark<br>(jcc@psstf.com)<br>Georgia Bar No. 127145<br>Thomas F. Gristina<br>(tfg@psstf.com)<br>Georgia Bar No. 452454<br>PAGE, SCRANTOM, SPROUSE,<br>TUCKER & FORD, P.C.<br>Synovus Centre<br>1111 Bay Avenue, 3rd Floor<br>Columbus, GA  31901<br>Tel.:  (706) 324-0251<br>Fax:  (706) 596-9992 | Bruce P. Keller*<br>(bpkeller@debevoise.com)<br>David H. Bernstein*<br>(dhbernstein@debevoise.com)<br>DEBEVOISE & PLIMPTON LLP<br>919 Third Avenue<br>New York, NY  10022<br>Tel:  (212) 909-6000<br>Fax:  (212) 521-7696<br><br>*  Admitted pro hac vice |

*Counsel for Velcera, Inc. and FidoPharm, Inc.*

11

## CERTIFICATE OF SERVICE

This is to certify that I have on this day filed the foregoing with the Court's CM/EF system, which will automatically give notice to all counsel of record.

This 27th day of April, 2012.

/s/ Joseph D. Wargo