UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| MERIAL LIMITED and MERIAL S.A.S<br><br>    Plaintiffs,<br><br>v.<br><br>VELCERA, INC. and FIDOPHARM, INC.<br><br>    Defendants. | Case No. 3:11-cv-00157-CDL |

**MERIAL'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR
PROTECTIVE ORDER TO STAY DISCOVERY ON VELCERA'S
COUNTERCLAIMS AND TO QUASH SUBPOENAS**

Velcera, Inc. and FidoPharm, Inc. (collectively, "Velcera") seek discovery from Merial,

and non-parties Lambert Vet Supply, LLC and Douglas W. Lambert (collectively, "Lambert"),

related solely to Velcera's Counterclaims. *See* Dkt. 41-2, Exhibit A, Lambert Subpoenas. On

March 23, 2012, Merial filed the instant motion, requesting this Court issue a protective order

and stay discovery on Velcera's Counterclaims, and quash the Lambert Subpoenas, pending the

Court's ruling on Merial's Motion to Dismiss. *See* Dkt. 24, Merial's "Motion to Dismiss"; Dkt.

41, Merial's "Motion for Protective Order." Merial also moved the District Court for the District

of Nebraska, the court issuing the Lambert Subpoenas, to stay enforcement of the Lambert

1

Subpoenas.[1]  *See Merial Limited v. Velcera, Inc.*, No. 4:12-cv-3065, Dkt. 1 (Merial's "Motion to Stay"). That motion is currently pending.[2]

In its Brief in Opposition to Merial's Motion for Protective Order ("Opposition Brief") Velcera inaccurately cites trademark law in an attempt to argue that the Lambert Subpoenas seek discovery relevant to the strength of the FRONTLINE PLUS Trade Dress. The discovery Velcera seeks relates neither to the strength of the FRONTLINE PLUS Trade Dress nor the parties' retail outlets and purchasers as Velcera argues. Even more egregious is that Velcera blames its trade dress infringement on Merial, arguing that the "alleged infringement here is a self-inflicted wound caused by Merial[]…."

Given that (1) Merial's Motion to Dismiss, if granted, will entirely eliminate discovery that relates to Velcera's Counterclaims; (2) the Lambert Subpoenas do not seek information that relates to any claim or defense other than Velcera's Counterclaims that are the subject of Merial's Motion to Dismiss; and (3) a stay of discovery will not prejudice Velcera, this Court should grant Merial's Motion for Protective Order.

For the Court's convenience, the discovery requests from the Lambert Subpoenas are set forth below:

---

[1] Merial does not dispute that Fed. R. Civ. P. 45 provides that the court issuing a subpoena has authority to quash or modify the subpoena. Therefore, Merial filed its Motion to Stay in the District Court for the District of Nebraska. This Court, however, has authority to stay discovery on Velcera's Counterclaims, which necessarily includes the Lambert Subpoenas.

[2] Velcera states that Merial untimely filed its Motion to Stay in Nebraska. Dkt. 55, Opposition Brief, at p.2, FN 1. The Lambert Subpoenas requested Lambert to produce documents, and sit for a deposition, on April 2, 2012. *See* Dkt. 41-2, Exhibit A, Lambert Subpoenas. As stated in Merial's Reply Brief in Support of its Motion to Stay filed in the Nebraska Court, on March 28, 2012, counsel for Lambert expressly informed counsel for Merial that the deposition and document production ordered for that day were postponed. *See* Nebraska Dkt. 19, p. 7. The dates for the document production and Lambert deposition have not yet been scheduled and therefore Lambert's time for compliance had not passed. *Id*. Consequently, Merial's motion, filed April 3, 2012, was timely filed. *Id*.

Document Request 1: All documents relating to any contract, agreement, or understanding between You and Merial regarding the sale or distribution of FRONTLINE Products.

Document Request 2: All documents relating to any contract, agreement, or understanding between You and any Third party regarding the sale or distribution of FRONTLINE Products.

Document Request 3: All documents relating to the sale or distribution of FRONTLINE Products in non-veterinary channels, including, but not limited to, online and brick-and-mortar retail stores and pharmacies.

Document Request 4: All documents, including, but not limited to, any communications, correspondence, or reports, between You and Merial regarding the sale or distribution of FRONTLINE Products in non-veterinary channels.

## I.    ARGUMENT

### A.    Merial's Motion Will Dispose of Velcera's Entire Counterclaim.

Velcera argues that a discovery stay is not appropriate because Merial's Motion to Dismiss will not dispose of the entire case. *See* Dkt. 55, Opposition Brief, at p. 4. As previously stated, however, this Court has broad discretion to alter the sequence of discovery. *See Thomas v. Ammons*, 1:08-CV-145 (WLS), 2009 WL 3172662, *4 (M.D. Ga. Sept. 30, 2009) (stating that Rule 26(d) "provides the Court broad discretion to alter the sequence of discovery 'for the convenience of the parties…and in the interests of justice' "). Courts should also resolve a motion to dismiss before discovery begins. *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir.1997)) ("Facial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should ... be resolved before discovery begins.").

Moreover, some courts have granted stays relating only to counterclaims, and others have indicated that stays are appropriate if they extinguish some claims. *See e.g., Public Serv. Enterprise Group Inc. v. Phila. Electric Co.*, 130 F.R.D. 543, 549 (D. N.J 1990) (noting for contingent counterclaims that the Court "will stay all discovery and motion practice on these

3

counterclaims until further order."); *White v. Georgia*, No. 1:07-cv-01739-WSD, 2007 WL 3170105, at \*2 (N.D. Ga. Oct. 25, 2007) ("[r]esolution of the pending motions to dismiss may extinguish some or all of the claims against each defendant, potentially restricting the scope of discovery significantly").

Good cause exists to stay discovery related to Velcera's Counterclaims pending Merial's Motion to Dismiss. Velcera's Counterclaims, which relate to false advertising and deceptive trade practices, are unrelated to Merial's cause of action against Velcera for trade dress infringement and false advertising. Thus, it is possible to stay discovery only as to Velcera's Counterclaims without any prejudice to Velcera. If Merial's Motion to Dismiss is granted, it will dispose of Velcera's claims against Merial, and entirely extinguish the need for discovery on those topics. If Merial's Motion to Dismiss is denied, the parties can then conduct the discrete, separate, discovery related to Velcera's Counterclaims. In either event, Merial submits that it is appropriate for this Court to stay discovery on Velcera's Counterclaims, and quash the Lambert Subpoenas, pending the Court's ruling on Merial's Motion to Dismiss.

**B.    The Lambert Subpoenas Do Not Seek Information Relevant to Merial's Claims.**

**1.    The Lambert Subpoenas Do Not Seek Information Relevant to the Similarity of the Parties' Retail Outlets and Purchasers.**

Contrary to Velcera's assertion, the discovery it seeks does not relate to its defense regarding the similarity of the parties' retail outlets and purchasers, which is a likelihood of confusion factor. *See* Dkt. 55, Opposition Brief, at pp. 4-7. Velcera specifically argues that it "cannot determine the identity of [the] retail outlets [that sell FRONTLINE PLUS] without discovery." Dkt. 55, Opposition Brief, at p. 6. Velcera, by virtue of subpoenaing Lambert and by its own admission, is aware that Lambert sells FRONTLINE PLUS in its retail store. *See id*. No discovery is therefore needed on this issue. Moreover, Merial has already acknowledged, as

4

explained by Velcera in its Opposition Brief, the well-known fact that, despite Merial's stated

policy of selling FRONTLINE PLUS only either to veterinarians directly or to distributors who

agree to distribute FRONTLINE PLUS only to veterinarians, Merial's FRONTLINE PLUS

products are available in retail stores. *See* Dkt. 55, Opposition Brief, at pp. 5-6; Amended

Compl., Dkt. 6, ¶¶ 19-20. [3]

The extensive discovery Velcera propounds relates instead to the diversion of

FRONTLINE Products to Lambert, the responses to which are not necessary for Velcera to

determine where Merial sells its products, or that Lambert sells FRONTLINE Products.

Specifically, each request relates to the "sale or distribution of" FRONTLINE Products in

Lambert's non-veterinary channel, including contracts between Lambert and Merial, contracts

between Lambert and third parties, and communications with Merial.  It is evident from these

requests that Velcera hopes to uncover information that Merial diverts products to Lambert, or

encourages third parties to do so.  The diversion of Merial's products is the subject of Velcera's

Counterclaims and Merial's pending Motion to Dismiss.

### 2.  The Lambert Subpoenas Do Not Seek Discovery Relevant to the Purported Strength of the FRONTLINE PLUS Trade Dress.

Velcera makes the unsupported suggestion that Velcera's infringement of the

FRONTLINE PLUS trade dress is Merial's fault.  *See* Opposition Brief, Section A(1)(b).

---

[3] Velcera also argues that "Merial cannot on the one hand seek discovery on the channels of
distribution from Velcera and on the other hand argue for a stay of discovery on that issue."  Dkt.
55, Opposition Brief, at p. 7.  Merial only seeks discovery from Velcera regarding portions of its
distribution channels that Velcera controls.  Velcera, on the other hand, seeks discovery from
Merial and third parties regarding channels that Merial does not control, namely, those who
receive FRONTLINE PLUS after Merial sells its products to veterinarians or distributors who
agree to only sell to veterinarians.  Velcera's subpoena on Lambert makes clear that the
discovery Velcera seeks relates to the diversion of Merial's FRONTLINE products to the retail
market – the subject of the Counterclaims – not Merial's authorized distribution channels.

Velcera argues that because Merial does not do enough to prevent the diversion of FRONTLINE PLUS to the retail market, that the FRONTLINE PLUS trade dress is somehow "weakened." Velcera would have the Court believe that its nearly identical packaging for its nearly identical product has little to nothing to do with the problem. Velcera' argument is nonsensical.

"The strength of [a] trade dress determines the scope of protection it will receive: strong trade dress receives strong protection, and weak trade dress receives weak protection." *Ambrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1539 (11th Cir. 1986). When analyzing the scope of protection of a trade dress, courts consider several factors. *Id*. Most notably, the Eleventh Circuit analyzes (1) whether the trade dress should be classified as generic, descriptive, suggestive, or arbitrary, and (2) the extent to which third parties use the trade dress. *Id*. The reasoning behind the latter inquiry is to determine "whether the unauthorized third-party uses significantly diminish the public's perception that the mark identifies items connected with the owner of the mark." *Univ. of Ga. Athletic Ass'n v. Laite*, 756 F.2d 1535, 1546, fn 27 (11th Cir. 1985). The more third parties that use the trade dress, the less protection the trade dress receives. *See Ambrit, Inc.*, 812 F.2d at 1539.

Velcera claims that the discovery it seeks "is critical to Velcera's ability to demonstrate the loss of the purported strength of the FRONLINE Plus trade dress through Merial's disregard of its own marketing channels and/or failure to police its marks." Dkt. 55, Opposition Brief, at p. 7. It then cites to a case from the Southern District of New York, *Malaco Leaf, AB v. Promotion in Motion, Inc.*, 287 F. Supp. 2d 355, 364-65 (S.D.N.Y. 2003), and a treatise on trademark law, 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 17:8 (4th ed.), for the proposition that Merial's FRONTLINE PLUS trade dress has been weakened because Merial does not police the channels of trade in which its products are sold. *See* Dkt. 55, Opposition Brief, pp. at 7-8. Besides falsely implying that Merial does not police the distribution of its

6

products,[4] Velcera's citations make it clear that failure to police a party's trade dress refers to policing use of one's trade dress by <u>third party infringers,</u> not by oneself. *See Malaca Leaf, AB*, 287 F. Supp. 2d at 364-365 ("A product design trade dress may become generic, meaning commonly used and not entitled to protection, "as a result of the trademark owner's failure to police [it]..., so that widespread usage by competitors leads to generic usage among the relevant public, who see many sellers using the same [product design]" (internal quotations omitted); *McCarthy*, § 17:8 (same). Neither citation refers to failing to police marketing channels of one's own product. Velcera essentially argues that Merial's FRONTLINE PLUS trade dress is somehow weakening *itself* by virtue of the fact that FRONTLINE PLUS is available in retail channels. Merial is not aware of any authority for that proposition, and Velcera provides none.

Velcera's PETARMOR packaging is, without question, similar to Merial's FRONTLINE PLUS packaging. *See Merial Ltd. et al. v. Cipla Ltd. et al.*, No. 3:07-CV-125-CDL, Dkt. 75 (M.D. Ga. June 21, 2011) ("The strategy for the packaging of PetArmor Plus to mimic the packaging of Frontline Plus will result in loss of brand recognition for Merial"). Velcera's document requests to Lambert plainly do not seek information concerning whether additional third parties use packaging similar to Merial's FRONTLINE PLUS packaging. Rather, the requests all relate to Merial's alleged diversion of its products.

## C.    Staying Discovery on Velcera's Counterclaims and the Lambert Subpoenas Will Not Prejudice Velcera's Ability to Defend Against Merial's Claims.

As set forth above, the discovery Velcera seeks from Lambert relates solely to Velcera's Counterclaims.[5] A stay of discovery related to those claims will not prejudice Velcera's ability

---

[4] The underlying lawsuit is a result of Merial policing its trade dress against a third party that is infringing Merial's rights, *i.e*., Velcera.

[5] The fact that Velcera's discovery requests are limited to a deposition and four document requests is irrelevant. *See* Dkt. 55, Opposition Brief, at p. 5, FN 2. Staying discovery will save the parties and non-parties significant time and expense, and will conserve judicial resources to

to defend itself against Merial's claims. *See Arriaga-Zacarias v. Lewis Taylor Farms, Inc.* No. 7:08-CV-32 (HL), 2008 WL 4544470, \*2 (M.D. Ga. Oct. 10, 2008)  ("Because there is a potential that this claim could be dismissed and these costs avoided, the Court finds that good cause exists for staying discovery").  If the Court denies Merial's Motion to Dismiss, the parties can resume discovery on Velcera's Counterclaims, and Velcera can subpoena information from third parties as it deems appropriate.  On the other hand, Merial and third parties, such as Lambert Vet Supply and Douglas Lambert, will suffer damage if a stay of discovery is not granted, by engaging in significant discovery that is both time consuming and expensive. Therefore, this Court should stay discovery pending resolution of Merial's Motion to Dismiss.

## II.   CONCLUSION

For the reasons set forth above, and in Merial's Motion for Protective Order and accompanying brief, Merial requests that this Court issue a protective order and stay discovery on Velcera's Counterclaims, and quash the Lambert Subpoenas, pending the Court's ruling on Merial's Motion to Dismiss.

---

the extent discovery disputes might otherwise arise.  This outweighs any potential prejudice that will result from the stay.

Respectfully submitted, this 14th day of May 2012.

/s/ **Nadya M. Sand**

Judy Jarecki-Black, Ph.D., Esq.
(judy.jarecki@merial.com)
Georgia Bar No. 801698
MERIAL LIMITED
3239 Satellite Blvd.
Duluth, Georgia  30096-4640
Tel.: (678) 638-3805
Fax: (678) 638-3350

Edward D. Tolley, Esq.
(etolley@mindspring.com)
Georgia Bar No. 714300
COOK NOELL TOLLEY & BATES LLP
304 East Washington Street
P.O. Box 1927
Athens, GA 30603-1927
Tel.: (706) 549-6111
Fax: (706) 548-0956

J. Patrick Elsevier, Ph. D., Esq.
(jpelsevier@jonesday.com)
Georgia Bar No. 246694
JONES DAY
12265 El Camino Real
Suite 200
San Diego, California 92130-4096
Tel.: (858) 314-1200
Fax.: (858) 314-1150

Frank G. Smith, III, Esq.
(frank.smith@alston.com)
Georgia Bar No. 657550
Jason D. Rosenberg, Esq.
(Jason.rosenberg@alston.com)
Georgia Bar No. 510855
Matthew W. Howell, Esq.
(matthew.howell@alston.com)
Georgia Bar No. 607080
Nadya M. Sand, Esq.
Georgia Bar No.  156051
(nadya.sand@alston.com)
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Tel.: (404) 881-7000
Fax: (404) 881-7777

*Counsel for Plaintiffs Merial Limited and Merial SAS*

9

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

MERIAL LIMITED and MERIAL SAS

      Plaintiffs,

v.

VELCERA, INC. and FIDOPHARM, INC.

      Defendants

Civil Case No. 3:11-cv-00157-CDL

**CERTIFICATE OF SERVICE**

I hereby certify that I have this date filed foregoing MERIAL'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER TO STAY DISCOVERY ON VELCERA'S COUNTERCLAIMS AND TO QUASH SUBPOENAS, via the Court's CM/ECF system, which will automatically give notice to all counsel of record.

This 14th day of May, 2012.

                    s/ Nadya M. Sand
                    Nadya M. Sand