IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| MERIAL LIMITED and<br>MERIAL S.A.S.,<br><br>    Plaintiffs – Counterclaim Defendants<br><br>v.<br><br>VELCERA, INC. and FIDOPHARM,<br>INC.,<br><br>    Defendants – Counterclaim Plaintiffs | Case No. 3:11-cv-00157-CDL |

## JOINT DISCOVERY STATUS REPORT

Pursuant to the June 27, 2012 Order of this Court [Doc. 69], counsel for the parties have conferred and jointly submit this discovery status report. The parties have resolved all outstanding discovery disputes except for the following two issues that require resolution by the Court: (i) the length of the proposed extended discovery period; and (ii) the number of custodians and search terms from which to search and collect ESI. The parties have set forth their respective positions on those two issues below.

## I. The Extended Discovery Period

The parties have been unable to agree on a proposed schedule for completion of discovery and have therefore included two alternative schedules for the Court's consideration.[1]

### A. Velcera's Proposed Schedule

Velcera proposes that discovery be extended for a period of six (6) months from the date the Court enters this amended scheduling order. Six months is the exact time period for discovery contemplated by the Court in its Rule 16/26 Order [Doc. 21]. While Merial argues for a four month extension, the reality is that virtually no discovery in this case has transpired to date. Moreover, six months is <u>realistic</u> given that the parties need *first* to obtain ESI, a complex process that alone may take the four months for discovery proffered by Merial. Furthermore, four months is <u>not realistic</u> given that Velcera expects Merial's consistent pattern of unreasonable discovery conduct to continue.

### (1) Virtually No Discovery Has Occurred To Date.

Despite diligent efforts to seek discovery on its defenses and counterclaims, Velcera has had the discovery door slammed shut by Merial. Velcera sought discovery from Merial, but Merial moved to stay. Velcera attempted to take third-party discovery,

---

[1] Pursuant to the Court's instructions, the parties have emailed the Court the Proposed Amended Scheduling Order (containing the two alternative schedules) and the Proposed Order Governing Production of Electronically Stored Information.

2

but Merial moved to stay enforcement of those subpoenas in Nebraska.[2] Velcera sought Merial's ESI, but Merial refused and forced Velcera to move to compel. While Merial will have this Court believe that "[t]he parties have been engaged in discovery for approximately six months," the indisputable fact is that no discovery has occurred on Velcera's counterclaims, there has been no ESI discovery, and Merial's affirmative case is still in its infancy. Merial has taken only two depositions thus far – a 30(b)(6) deposition of Velcera in April that was related solely to Velcera's financial documents, and a third party deposition of one of Velcera's vendors. There have been no expert depositions and no other depositions of Velcera.

Instead, it has taken a ruling from this Court so that Velcera could commence discovery in this case. It took a ruling from this Court before Merial would drop its frivolous objections based on the "hyper-counting of subparts." And it took a ruling from this Court to force Merial to engage in ESI discovery. Indeed, virtually *nothing* in this case has happened without the filing of a motion. Yet, despite its indisputable conduct with discovery thus far, Merial advances a four month discovery period to complete *all* discovery in this case. That is not realistic because, as shown above, no substantive discovery has occurred.

---

[2] The Nebraska District Court has denied Merial's motion. In denying the motion, the Court held that Merial's objections to the relevancy of the discovery sought by the subpoenas are without merit.

### (2) The Parties Must First Obtain ESI.

The parties must first obtain discovery of electronically stored information ("ESI"). ESI is a complex process that will require the following:

- The parties must exchange lists identifying the custodians and search terms from whom they would like to search ESI. The process of agreeing on custodians and search terms could conceivably involve motion practice.

- The parties must search relevant custodian files and computers, identify potentially responsive information and documents, compile the information and documents into a database; and review the information and data for responsiveness and privilege prior to production.

- The parties must load the other party's production into a database and review and analyze the production.

Even without any motion practice concerning disputes with ESI production, Velcera expects it will take the parties at least three months to search for, identify, compile and review ESI, including the review and analysis of the opposing party's ESI production.

### (3) A Significant Amount Of Discovery From The Parties And Third Parties Still Needs To Take Place.

Additional discovery from the parties and third parties must also take place, including the following:

4

- Velcera expects to take extensive third party discovery in support of its counterclaims. Velcera will need to work within the confines of the schedules of these third-parties, many of whom are veterinarians who, like physicians, are notoriously difficult to schedule.
- In addition, these third-parties will be producing documents and will require a reasonable amount of time to comply with Velcera's subpoenas to search for, identify, and compile responsive information.
- Velcera also faces the potential for motion practice (e.g., motions to compel) in the jurisdictions from which the third party subpoenas will issue, especially if the third parties' objections are prompted and/or coordinated by Merial.
- Although the Nebraska District Court has denied Merial's motion to stay, Velcera still faces motion practice in Nebraska given that the third-party (Lambert Vet Supply) has filed objections to Velcera's subpoenas.
- Velcera will take depositions of Merial witnesses.
- Merial will likely take additional depositions of Velcera (Merial unilaterally noticed the depositions of Velcera witnesses last month but then agreed to postpone those depositions in light of the Court's June 27 Order.)
- The parties will depose each other's expert witnesses.

Even assuming that discovery proceeds without motion practice (which for Merial is unlikely), four months is not sufficient or realistic to complete all discovery. Furthermore, the same firms and several of the same lawyers are involved in the two upcoming trials in the related patent cases in August and November. Accordingly, Velcera believes that six months is both a reasonable and realistic time for discovery that will allow this case to proceed expeditiously toward resolution.

### (4) Velcera Expects Merial's Unreasonable Discovery Conduct To Continue.

Merial's proposed four month discovery period is not realistic for the additional reason that Velcera expects Merial's consistent pattern of unreasonable discovery conduct to continue. As this Court knows, little has happened in this case without a motion being filed. In fact, Merial has already engaged in conduct that contemplates future motion practice. Merial argues below that it has already "collected and reviewed email ESI from five custodians." However, Merial has not received a single search term or custodian from Velcera to begin searching its ESI. The agreed-upon protocol governing ESI (which has been emailed to the Court as a proposed order) requires the parties to exchange lists of custodians and search terms within a specified time after entry of the protocol as an order of the Court. Accordingly, and contrary to its assertion below, Merial <u>cannot</u> have already engaged in ESI discovery because the parties have <u>not</u> yet exchanged or agreed to any search terms or custodians. With Merial's continued "my way or the highway" approach to discovery, four months is not realistic for the completion of all discovery in this case.

### B. Merial's Proposed Schedule

Merial proposes that discovery be extended for a period of four months from the date the Court enters this amended scheduling order. This Court's Rule 16/26 Order provides that "absent good cause shown all discovery will be completed within six months after the filing of responsive pleadings or a motion staying filing of responsive pleadings." Dkt. 21, p. 3. The parties have been engaged in discovery for approximately six months (since January 20, 2012). During those six months, the parties have taken three depositions,[3] served four expert reports and two rebuttal reports, and produced non-ESI documents. Merial further produced its non-email ESI, and collected and reviewed email ESI from five custodians.[4] In light of the discovery the parties have completed in six months, four additional months of discovery is sufficient time to complete the discovery remaining in this case – discovery on Velcera's counterclaims, production of ESI, and depositions of the parties' four expert witnesses.

Velcera's proposed six month discovery extension provides for a total discovery period longer than the Court's Rule 16/26 Order. At least three of the six months, Velcera contends, are needed to search for, identify, compile, and review ESI. Such a time period is excessive. In February, the parties initially agreed to a five month period of discovery in the Joint Discovery Plan & Scheduling Order [Doc. 30], which was later

---

[3] The third deposition is scheduled for Monday, July 16, which falls within the current discovery period.

[4] Merial will re-collect, re-search, and re-review its ESI per the ESI Order the Court adopts.

7

extended. When agreeing to that schedule, Velcera seemingly deemed five months sufficient time to complete discovery on Merial's claims and its counterclaims. With much of the discovery completed on Merial's claims, the parties do not require six months to complete discovery. Merial therefore believes four months is a reasonable time for discovery that will allow this case to proceed expeditiously toward resolution.

## II.     ESI

The parties remain unable to agree on the number of custodians and search terms from which to search for ESI. Although the parties have extensively briefed this issue, the parties' respective positions are outlined below for the Court's convenience.

### A. Velcera's Position

Velcera seeks only to search up to twenty-five (25) Merial custodians and twenty-five (25) search terms per custodian. Given that discovery may now proceed on Velcera's counterclaims, and the fact that Velcera faces a damages claim of nearly $25 million according to Merial's expert, Velcera's position is reasonable and furthers the goal of responsible, targeted ESI discovery to reduce the associated burdens and costs.

First, the testimony of Merial's own witnesses in the related patent litigation confirms the reasonableness of Velcera's position. Velcera reviewed the depositions of Dr. Zachary Mills (Merial's Executive Director of U.S. Sales Operations); James Poole (Merial's Executive Director of Finance); and Bill Lopez (Merial's Executive Director of Marketing). *Sixty-two* people report to Mr. Poole, and *nine* people report to Mr. Lopez. *Thirty* district managers and *three* regional managers report to Dr. Mills. According to Dr. Mills, all three regional managers prepare business plans discussing the strengths and

weaknesses of Merial's competitor's products – issues that are indisputably relevant to the claims and counterclaims in this case.  Indeed, the files of each of the thirty district managers alone could reasonably contain relevant information and documents responsive to Velcera's document requests and search terms.  Velcera, however, recognizes the burdens and impracticality associated with searching the files of each of the *more than one hundred* custodians – or even all thirty of the relevant district managers – identified through its review of only three Merial depositions.  Accordingly, in the spirit of compromise, Velcera seeks only to search up to twenty-five Merial custodians.

Indeed, the fact that Merial found it necessary to search ESI from *seven non-party* custodians and its reason for doing so underscores the reasonableness of Velcera's proposal to search only twenty-five Merial custodians.  Merial's initial April 6, 2012 draft ESI protocol limited the number of custodians to *three* and the number of search terms to *five* per custodian.  (*See* Ex. 2 to Motion to Compel, Doc. 52).  Merial later proposed just *five* custodians and now – in the purported spirit of compromise – proposes just *nine*.  Merial's position is unreasonable for several reasons.  First, and *after* Merial had sent Velcera its draft protocol, Merial demanded that *non-party* ColemanBrandworx New York ("CBX") respond to Merial's subpoena by searching ESI from *seven* CBX custodians.  (*See* April 17 and 19, 2012 emails between J. Rosenberg and K. Fee, attached as Exhibit 1 to Doc. 64).  In fact, Merial initially agreed with CBX to limit the search to one CBX custodian (Christine Arakelian), but later backed out of its agreement because Merial "identified several individuals at CBX that [it] believe[s], based on Velcera's production, may have information responsive to the subpoena."  (*Id.*)

Apparently recognizing that the search of only one CBX custodian's file was clearly insufficient, Merial explained to CBX that *six additional custodians* was necessary because Ms. Arakelian was not always "copied on all correspondence re: CBX's work for Velcera …" (*Id.*) Likewise, the nine Merial custodians that Merial proposes to search may not always have been copied on all the correspondence that is potentially responsive to Velcera's documents requests and proposed search terms. The concern is even much greater here given that Merial is a larger entity than CBX and will have a much larger volume of potentially responsive information from a larger number of custodians, especially considering the nature of the claims and counterclaims in this litigation (as compared to the limited project and work that CBX performed for Velcera).

In addition, Velcera's proposal to use twenty-five search terms is reasonable, especially now that Velcera's counterclaims have expanded the scope and complexity of discovery in this case. Indeed, Merial demanded that non-party CBX run *five* search terms – all of which Merial believed were necessary for Merial to capture all correspondence regarding the CBX project for Velcera. (*See* Ex. 1 to Doc. 64). It is inconceivable that ten search terms could reasonably capture all potentially relevant information that Velcera might use to support its defenses and counterclaims.

Finally, Merial's purported "compromise" on custodians and search terms (from five to nine, and from five to ten, respectively) is far from any good-faith compromise. Prior to the Court's June 27 Order denying Merial's motion to dismiss Velcera's

10

counterclaims[5], Merial proposed five custodians and five search terms. Even *after* the denial of their motion to dismiss, Merial has offered only *four* more custodians and *five* more search terms. Merial's supposed "compromise" is unreasonable on its face.

### B. Merial's Position

Merial proposes that the parties search nine custodians, using no more than ten search terms per custodian.

"Excessive e-discovery, including disproportionate, overbroad email production requests, carry staggering time and production costs that have a debilitating effect on litigation….Generally, the production burden of these expansive requests outweighs the minimal benefits of such broad disclosure." Dkt. 60, Rosenberg Decl., at Exh. K; *see Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006) (discovery rules do not permit a party to go on a fishing expedition). Chief Judge Randall Rader of the Federal Circuit, while unveiling the Federal Circuit Advisory Council's ESI Model Order ("Federal Circuit Order"), stated that "I saw one analysis that concluded that .0074% of the documents produced actually made their way onto the trial exhibit list-less than one document in ten thousand. And for all the thousands of appeals I've evaluated, email appears more rarely as relevant evidence." *DCG Sys., Inc. v. Checkpoint Technologies, LLC*, No. C-11-03792 PSG, 2011 WL 5244356 (N.D. Cal. Nov. 2, 2011) (quoting Judge Rader). For that reason, various Courts have adopted model e-discovery orders to limit the time and production costs associated with e-discovery, including the Federal Circuit

---

[5] Velcera's counterclaims allege a vast scheme of fraud and false advertising.

Order and the Eastern District of Texas' [Model] Order Regarding E-Discovery in Patent Cases ("Texas Order"). *See* Dkt. 60, Rosenberg Decl. at ¶ 7, Exhs. J-K. The goal of these model orders "is to promote economic and judicial efficiency by streamlining e-discovery, particularly email production, and requiring litigants to focus on the proper purpose of discovery-the gathering of material information-rather than permitting unlimited fishing expeditions." *Id*. at ¶ 7, Exh. K. The orders do so by limiting the number of custodians (Federal Circuit Order provides for five custodians, the Texas Order for eight), and using a limited number of search terms (Federal Circuit Order provides for five, the Texas Order for ten).

Merial's approach to ESI discovery aligns with the Texas Order and Federal Circuit Order and their underlying policies to limit the cost and time of production in light of the limited benefits of excessive e-discovery. Seeking to simplify and reduce the costs and time associated with electronic discovery, Merial proposes searching nine custodians (this results in searching four more custodians than Merial agreed to in its ESI protocol). These custodians include the seven individuals identified in Velcera's mandatory disclosures, which include Merial's three regional sales directors, and two additional custodians identified by Merial that might possess responsive documents.

Velcera, on the other hand, proposes searching twenty-five custodians (the same number it proposed in its ESI protocol), without any showing of why twenty-five individuals who report to Dr. Zachary Mills, James Poole, or Bill Lopez might possess information regarding Merial's FRONTLINE product – as opposed to other Merial products – or the claims in this case. Indeed, Velcera's mandatory disclosures name only

12

seven Merial employees as "persons with knowledge" of the claims and defenses in this case. Merial will search the ESI of its three regional sales directors, whom Velcera identifies above as individuals that might possess responsive documents. Because each district manager reports to a regional sales director, Merial need only search the documents of the regional sales directors to obtain relevant ESI in a cost efficient and expeditious manner.

Velcera argues above that because ColemanBrandworx New York ("CBX"), Velcera's brand development agency subpoenaed by Merial, agreed to search and produce ESI from seven custodians that this undermines Merial's position, especially given the limited work CBX performed for Velcera. Merial, however, requested that these custodians be searched only after reviewing documents produced by Velcera in the case and determining that each was likely to possess relevant information responsive to the subpoena. Velcera has attempted no such showing. CBX was the agency that assisted Velcera in creating the infringing packaging, and its work for Velcera was not limited. Indeed, it produced more than 30,000 pages of documents in response to Merial's request. Further, CBX did not object to Merial's request to search additional custodians.

Without articulating any reason for its number, Velcera requests that the Court compel Merial to run twenty-five search terms on each custodian. Merial proposes that the parties run ten search terms on each custodian, which doubles the number it proposed in its ESI protocol and as set forth in the Federal Circuit's Order, and is the same as that set forth in the Texas Order.

Contrary to Velcera's assertions above, Merial worked to reach a good-faith compromise with Velcera. Merial increased the custodians it proposed searching from five to nine, and doubled its search terms. Velcera, however, refused to reduce its proposed number of custodians or search terms during the meet and confer process.

Dated: July 12, 2012.    WARGO FRENCH

/s/ Michael Wolak III
Joseph D. Wargo
Georgia Bar No. 355045
(jwargo@wargofrench.com)
Michael S. French
Georgia Bar No. 276680
(mfrench@wargofrench.com)
Michael Wolak III
Georgia Bar No. 773197
(mwolak@wargofrench.com)
999 Peachtree Street NE
26th Floor
Atlanta, GA 30309
Tel: (404) 853-1500
Fax: (404) 853-1501

-and-

William L. Tucker  
(wlt@psstf.com)  
Georgia Bar No. 718050  
James C. Clark  
(jcc@psstf.com)  
Georgia Bar No. 127145  
Thomas F. Gristina  
(tfg@psstf.com)  
Georgia Bar No. 452454  
PAGE, SCRANTOM, SPROUSE,  
TUCKER & FORD, P.C.  
Synovus Centre  
1111 Bay Avenue, 3rd Floor  
Columbus, GA 31901  
Tel.:  (706) 324-0251  
Fax:  (706) 596-9992  

Bruce P. Keller*  
(bpkeller@debevoise.com)  
David H. Bernstein*  
(dhbernstein@debevoise.com)  
DEBEVOISE & PLIMPTON LLP  
919 Third Avenue  
New York, New York 10022  
Tel:  (212) 909-6000  
Fax:  (212) 521-7696  

\*  Admitted pro hac vice  

*Counsel for Velcera, Inc. and FidoPharm, Inc.*

15

**CERTIFICATE OF SERVICE**

This is to certify that I have on this day filed the foregoing with the Court's CM/ECF system, which will automatically give notice to all counsel of record.

This 12th day of July, 2012.

/s/ Michael Wolak III